UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 3:10-CR-126 JD |
| | ) | 3:12-CV-720 JD |
| MICHAEL SHENEMAN | ) | |

**OPINION AND ORDER**

Now before the Court is the Defendant Michael Sheneman's motion for leave to propound discovery on the government. Mr. Sheneman filed a motion under 28 U.S.C. § 2255 subsequent to his conviction on several counts of wire fraud, primarily asserting that his attorney was constitutionally ineffective for failing to introduce various categories of evidence at trial. Mr. Sheneman's motion offered little support for what that evidence would have actually been, so the Court directed him to supplement the record with affidavits from the would-be witnesses or other evidence to support his claims. Mr. Sheneman has submitted some of those materials, and now seeks discovery from the government as to additional materials. The government opposes this request, and the motion has been fully briefed. For the following reasons, Mr. Sheneman's motion is granted in part and denied in part.

### I. STANDARD OF REVIEW

Under Rule 6(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts, "A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." The Supreme Court has held that this rule codifies the Supreme Court's holding in *Harris v. Nelson*, 394 U.S. 286, 300 (1969) that "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, it is the duty of the

court to provide the necessary facilities and procedures for an adequate inquiry." *Bracy v. Gramley*, 520 U.S. 899, 909 (1997) ("Habeas Corpus Rule 6 is meant to be 'consistent' with *Harris*." (citing the advisory committee notes to Rule 6 of the Rules for § 2254 Proceedings, which, per the committee notes to the Rules for § 2255 Proceedings, are "fully applicable" to Rule 6 of the Rules for § 2255 Proceedings)).

## II. DISCUSSION

Mr. Sheneman's motion initially sought responses to 34 separate requests for production of documents. The government responded with several threshold arguments against permitting discovery, and also objected to each of the particular requests. In response to the government's objections, Mr. Sheneman narrowed and withdrew a number of his requests. The requests that remain include a forensic handwriting analysis allegedly conducted by the government in September 2010 (Request 1) and any documents identified by that analysis as forgeries (Request 27); all pre-closing documents (including the loan application, purchase contract, and addenda) for certain properties purchased by Zoleko (Requests 3, 8, 11, 12, 13, 25), Davies (Requests 10, 18–21), and Denaway (Request 23); and all communications between the mortgage brokerage and lender as to seven of the properties (Requests 28–34).

Addressing the threshold arguments first, the government argues that Mr. Sheneman's request should be denied as untimely, as it was submitted on the deadline for the parties' initial submission of evidence, meaning any materials produced through this discovery would be submitted after that deadline. The Court declines to deny the motion on that basis, though. The Court has discretion as to how to enforce the deadlines it sets, and declines to elevate procedure over substance in this instance. Given the appointment of counsel and counsel's need to get up to speed on the issues in this case, any delay in filing the motion for discovery was not unreasonable, so the Court will consider it on its merits.

The government next argues that good cause no longer exists for discovery because Mr. Sheneman's submissions thus far have failed to substantiate his claims to the extent that the requested materials could make a difference. The Court acknowledges, as does Mr. Sheneman, that Mr. Sheneman has not presented support for several of the categories of evidence he initially argued his attorney should have presented at trial. However, the Court already found in its June 2, 2014 order that Mr. Sheneman's allegations, if proven, could constitute a constitutional violation, which satisfied the good cause standard. [DE 255 p. 21–26; *see* DE 261]. Based on that finding, the Court directed both parties to supplement the record with evidentiary support for their assertions, and Mr. Sheneman has provided at least some support for his claims. Rather than change course mid-stream based on what has been submitted thus far, the Court will offer the parties the full benefit of that opportunity to submit additional evidence. Otherwise, denying the motion for discovery on this basis would also mean denying the § 2255 motion on its merits, and the Court prefers to allow the parties to fully brief the question of how the supplemented record affects the substance of Mr. Sheneman's underlying arguments before reaching a conclusion on the merits of his claim.

Turning to Mr. Sheneman's specific requests, Mr. Sheneman first asks the government to produce a forensic handwriting analysis of various documents that he believes the government to have conducted in or around September 2010. It is not clear whether such an analysis was ever performed, but, despite referring to this as the analysis it "allegedly performed," the government does not actually deny its existence. If this document exists, it could complement the expert reports Mr. Sheneman submitted opining that Ms. Zoleko's signatures and handwriting appear on the loan documents, by showing that it was not Jeremie or Mr. Sheneman's writing on those documents. That would provide evidentiary support for Mr. Sheneman's assertion that a

handwriting expert, had one been called at trial, would have testified that Ms. Zoleko's handwriting, not Jeremie's, appears on each of her loan applications, or, relatedly, that her signature appears on each of the loan and purchase documents. Accordingly, the Court grants the motion as to Request 1, and directs the government to produce this analysis, if it exists.

Mr. Sheneman next requests the originals of any documents the government's September 2010 analysis conclude were forged, so that his own expert can review them, presumably to refute the analysis' conclusions. However, this request is premature, as it is not clear whether that analysis exists or whether it does conclude any documents were forged. In addition, this analysis was not introduced at trial, so there is no need for Mr. Sheneman to refute any of the conclusions of that analysis. His burden at this point is to show what his counsel should have done at trial, and there would have been no need for counsel to rebut evidence that was never offered, so this request may fail on that ground also. The Court therefore denies the motion at this time as to Request 27.

Mr. Sheneman also requests the originals of the pre-closing documents for Zoleko's properties (Requests 3, 8, 11–13, and 25). The value of these documents would only be to allow Mr. Sheneman's handwriting expert to bolster the opinions she has already offered on Zoleko's signatures and handwriting. Though the expert characterized her opinions as "preliminary" since they were based on photocopies of trial exhibits and other documents, she expressed her opinions "to a 'highly likely' degree of forensic certainty." [DE 288-2, 298-5]. At least for the purpose of determining whether a hearing is warranted, the Court will presume that the expert's opinions would remain the same even after reviewing the originals. If this matter proceeds to a hearing and the government intends to challenge these opinions, then the Court will reevaluate whether an expert analysis of the original documents is warranted. Until then, it is not necessary for the

government to produce these documents solely for the purpose of allowing the expert to analyze the original documents. The Court therefore denies Requests 8, 11–13, and 25 at this time.

Those documents serve another potential purpose as to Request 3, which seeks pre-closing documents for the California Street property, as Mr. Sheneman wishes to show that this property was not "switched" on Zoleko, which is one of the outstanding issues. While the value of these documents may be quite small,[1] they are within the scope of materials Mr. Sheneman asserts his attorney should have offered at trial, so the Court grants the motion as to Request 3 as to the signed loan application, purchase contract, and any addenda for the California Street property. The government need not produce the originals at this time, though. The analysis Mr. Sheneman has submitted of Zoleko's signatures on other documents already gives him a basis to argue that, if Zoleko's signature appears on these documents, it is actually her signature, so a further handwriting analysis of these documents is not necessary to show that she signed them, at least prior to any evidentiary hearing.

Mr. Sheneman also requests original pre-closing documents for various Davies and Denaway properties. However, the handwriting expert offered no opinions as to any of Davies' or Denaway's documents, so there are no conclusions for her to confirm with the originals of these documents. It does not appear that he intends to perform such an analysis as to Davies or Denaway, either,[2] so discovery of these documents is not warranted for that purpose. Mr. Sheneman offered no response to the government's objections as to Davies' documents, so the

---

[1] For example, all of the handwritten loan applications for Zoleko's properties that were introduced at trial were photocopies of each other, save for the property addresses, so that same application with the California address inserted would do little to show Zoleko knew she was purchasing that property.

[2] That would be reasonable, as the only handwriting (as opposed to signature) that was admitted at trial and is subject to dispute was in Zoleko's applications. A handwritten application for one of Davies' loans was also admitted, but Ms. Duesler testified that she had copied that document by hand.

Court denies Requests 10 and 18–21. As to the Denaway documents, Mr. Sheneman argues that these documents would show that Brenda Buck, not Jeremie, completed the loan documents. Mr. Sheneman does not need discovery to make that argument, though, as two of the loan applications introduced at trial for Denaway's properties stated that they were completed by Ms. Buck, and contain her signature. The conclusion to be drawn from those documents may be subject to dispute, but Mr. Sheneman already has the materials he needs to make that argument. The Court therefore denies Request 23 as well.

Last, Mr. Sheneman seeks communications between the mortgage brokerage and lender for certain of the properties, on the belief that they would show the involvement of persons other than the Shenemans and would reveal no communications between the Shenemans and the lenders. These are not among the materials Mr. Sheneman has asserted his attorney should have offered at trial, so they are not discoverable for their own sake. In his reply brief Mr. Sheneman argues that they would indicate what Andrew Beam's testimony would have been, since he has not procured an affidavit from Mr. Beam. Mr. Sheneman states in his own affidavit that Mr. Beam would testify that the Shenemans had no control over the documents that caused the loans and that the Shenemans never had any contact with Aapex.

It is not clear how these documents would show that, though. The Shenemans' involvement in the loan process was primarily through Jeremie's role as a loan officer. The government also called Tanya Boettcher and Lauren Duesler, the loan processors at Superior Mortgage, who testified that after receiving the loan applications from Jeremie, they interacted with the lenders and other third parties in order to process the loans. It should thus come as no surprise, and would be completely consistent with the government's case, for the communications between the brokerages and the lenders to not reflect the Shenemans'

6

involvement.³ The pertinent documents on this point would be the brokerage's communications with the buyers, not the lenders. But Mr. Sheneman has not requested those, nor is there is a need for further discovery on that topic, as many loan applications were introduced at trial naming Andrew Beam as the individual who interviewed the buyers for their loan applications. To the extent that is the point Mr. Sheneman wishes to make, it is already available to him.

For similar reasons, Mr. Sheneman's argument that Aapex Mortgage's handling of some of the loans proves he and Jeremie did not commit the fraud as to those properties is a non-starter. Ms. Duesler testified at trial that she used Aapex once or twice, and defense counsel examined her about communications she had with Aapex about two of the properties at issue.⁴ Thus, this point was already before the jury, and in any event, whether Ms. Duesler processed the loans through Superior Mortgage or turned them over to Aapex Mortgage is immaterial. The Shenemans were linked to both companies through Ms. Duesler, and the relevant question was not which company brokered the loans, but whether Jeremie was responsible for the falsehoods in the applications submitted to them. The Court therefore denies the motion as to Requests 28–34.

## IV. CONCLUSION

The Court GRANTS in part and DENIES in part Mr. Sheneman's motion for leave to propound discovery [DE 287]. The government is ORDERED to produce documents responsive to Requests 1 and 3, to the extent detailed herein, by January 26, 2015. If Mr. Sheneman wishes to submit any of those documents in support of his § 2255, he must do so by February 9, 2015.

---

³ In fact, the government expressly made the point at trial that the Shenemans' names were absent from the loan documents, arguing that they defrauded the lenders by concealing their involvement and their obvious conflicts of interest.

⁴ The HUD forms from those properties also indicate that Aapex Mortgage was receiving a loan origination fee, and also that Lauren Duesler was receiving a processing or broker fee.

The Court also requests that the parties brief the question of whether an evidentiary hearing is warranted on Mr. Sheneman's § 2255 in light of the supplemented record. The government's brief will be due on March 9, 2015, and Mr. Sheneman's brief will be due on April 6, 2015

SO ORDERED.

ENTERED: January 9, 2014

                                                    /s/ JON E. DEGUILIO
                                                   Judge
                                                   United States District Court